UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GEORGE V.[1],

        Petitioner,

        v.

WARDEN CALIFORNIA CITY
CORRECTIONS FACILITY, et al.,

        Respondents.

No. 1:26-cv-02167-TLN-CSK

A # 067-291-944

**ORDER**

This matter is before the Court on Petitioner George V.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO").  (ECF No. 2.)  Respondents filed an opposition.  (ECF No. 7.)  For the reasons set forth below, Petitioner's Motion is GRANTED.

I.      **FACTUAL BACKGROUND**[2]

Petitioner is a noncitizen who entered the United States on May 11, 2022.  (ECF No. 1 at 9.)  Petitioner asserts he does not have a criminal history.  (ECF No. 2 at 2.)  Further, there is no

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first names and last initial, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    The facts are not disputed.

1

evidence Petitioner has been found to be a danger to the community or a flight risk or failed to appear for immigration proceedings.

Petitioner has been detained in immigration custody since February 8, 2025.  (ECF No. 2 at 1.)  At the time Petitioner was taken into custody, Petitioner did not have a final order of removal.  (*See id.*; ECF No. 7-1 at 1.)  Petitioner was detained without an individualized custody determination or bond hearing.  (*See* ECF No. 1.)  Respondents do not contend otherwise.  (*See* ECF No. 7.)  On December 5, 2025, an immigration judge issued a final order of removal for Petitioner.  (ECF No. 7-1 at 1.)

Petitioner has now been detained for fourteen months, and he challenges the lawfulness of his civil detention and seeks immediate release.  (*See* ECF Nos. 1, 2.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.    ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

///

A.    Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause.  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).  Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

3

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, as discussed above, Petitioner has a substantial private interest in remaining free from detention.  Petitioner lived in the United States for over three years.  Despite that, Petitioner has now been detained for over fourteen months, cut off from the life and relationships he built.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner did not receive and individualized custody determination or bond hearing.  "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  Without a legitimate interest at the time of detention, or processes to ascertain whether there was a legitimate interest, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  The cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Certainly, the Government has an interest in removing individuals for whom there is a final order of removal.  However, the Government can execute its interests in removing

4

individuals while adhering to the most basic procedural safeguards.  Therefore, the Court finds this last factor also weighs in Petitioner's favor.

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where there was no final order of removal and no stated change in circumstances— the Court finds pre-deprivation notice and hearing are possible and valuable to preventing erroneous deprivation of liberty.

Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits, or at a minimum, that he has raised serious questions on the merits.

### B.   Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

(9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner GEORGE V. [A#067-291-944] from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of his release, Respondents must also return all of Petitioner's documents and possessions. The Clerk of the Court is directed to serve California City Correctional Center with this order. **Respondent must file a notice certifying compliance with this provision of the Court's Order by April 7, 2026**.

3. Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

5. This matter is referred to the assigned Magistrate Judge for further proceedings pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1)(B).

IT IS SO ORDERED.

Date: April 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7